## STATE *v.* HELM.

### Opinion delivered March 23, 1901.

1. INSANITY—ORAL PLEA.—Under Sand. & H. Dig., § 2286, providing that one convicted of crime may show that he is insane as reason why judgment should not be pronounced, and that if the court believe there is reasonable ground for believing him insane the question shall be determined by a jury, the insanity of accused may be shown without formal plea. (Page 171.)

2. INSTRUCTION—TEST OF INSANITY.—In a proceeding to determine whether one convicted of crime is insane, an instruction that if the jury find that defendant is so afflicted with mental disease that, when informed by the court of the nature of the indictment, his plea, and the verdict of conviction thereon, and of the consequences thereof, he would not *intelligently comprehend* such matters, they would be authorized to find him insane, is incorrect as calculated

to induce the jury to believe that he should be possessed of more intelligence at the time judgment is pronounced than is necessary. (Page 171.)

Appeal from Independence Circuit Court.

FREDERIC D. FULKERSON, Judge.

*Jeff Davis, Attorney General, Chas. Jacobson* and *S. D. Campbell,* for appellant.

When arraigned, if the accused has reason enough to appreciate his peril, and comprehend his condition with reference to the proceedings pending, he may be tried, though not entirely sane.  23 Ark. 34; 47 Am. Dec. 216; 16 Am. & Eng. Enc. Law, 622.  The instruction of the court as to the degree of mental capacity required was erroneous.  3 Wh. & Beck. Med. Jur. 176-7.

BATTLE, J.  P. B. Helm was indicted, in the Independence circuit court, for the crime of forgery and uttering a forged instrument.  He waived arraignment, and pleaded not guilty.  The jury who were impaneled to try him found him guilty of forgery, and left his punishment to the court, who assessed the same at two years' imprisonment in the state penitentiary.  In due time he was brought before the court to hear the judgment, and, being informed of the nature of the indictment against him, his plea to the same, and the verdict of the jury, the punishment assessed, and the effect and consequences thereof, and being asked by the court if he had any legal cause to show why judgment should not be pronounced against him, he said, by his counsel, he was insane. After inquiring into his mental condition, the court ordered a jury to be impaneled to determine whether he be insane, which was done, and they, after hearing the evidence adduced before them, found him to be insane; and the court ordered that he be confined in the lunatic asylum "until discharged therefrom as well," and that he be then confined in the jail of Independence county until, in the opinion of the court, he is sane, when judgment will be pronounced against him; and the state appealed.

The following was, substantially, the testimony before the jury:  Dr. Kennerly testified:  "That defendant had been addicted to the morphine habit for the last five years; that morphine has different effects upon different persons.  Its excessive use is detrimental, affects the digestion, assimilation and later the brain. That morphine has demoralized defendant's mental and physical

condition.  He had examined defendant two or three weeks ago, and again about an hour or two ago."

Q.  "I'll ask you whether or not, in your opinion, from your examination and your knowledge of this man, P. B. Helm, whether he has sufficient mental capacity to rationally comprehend his own condition with reference to the proceedings here in court?  A.  As compared to a rational man, he has not. · He has no conception, as a rational and sane man would."

Q.  "Then in your opinion he does not rationally comprehend his ·own condition with reference to these proceedings?  A.  As a rational man, no, sir."

"The last stage of the morphine habit is dementia.  Defendant has not reached that stage; has not lost his understanding; has memory, reason and will, and is able to exercise those faculties to some extent.  Have talked to defendant to-day in reference to this action, and he knew what I was talking about."

Q.  "If the court should call the defendant up now and inform him of the nature of the indictment which he was tried on, and of the verdict of guilty against him, and then explain the effect and consequences of that verdict, in your opinion, would he understand the explanation of the court?  A.  I think he would, but he could not appreciate the extent of it, as a well-balanced brain would."

"I take the ordinary human being as the standard of a well-balanced brain.  It is a rare thing to find a perfectly balanced brain.

Q.  (By the court.)  "Has he sufficient mental capacity to intelligently comprehend and intelligently reason and intelligently understand what is going on now?  A.  No, sir."

Dr. Dorr testified:  "Examined defendant in 1895 or 1896, and also within the last month.  He has used morphine to the extent that his nervous system is impaired.  From my knowledge of defendant and examination of him, in my opinion, defendant has not sufficient mental capacity to rationally comprehend his own condition with reference to the present proceedings as a sane man would."

·  "From examination of defendant, think defendant knows something of what is going on now.  He understands what is said; has use of the senses; has the power of perception to a certain extent.  If the court should bring defendant up now, and explain the nature of the indictment, he would understand that explanation

in a way, but don't think he would understand it as a sane person, taking the average human being as the standard of a sane person. If the court explained to the defendant the nature of the indictment, that he had been tried by a jury and found guilty on the charge, and the nature and effect of the judgment, defendant would have some understanding of it.

Q.   (By the court.)   "In your opinion, from your knowledge and examination of the defendant, has he sufficient mental capacity to intelligently comprehend what is going on now with reference to this proceeding?   A.   I do not think he does, to the extent of a sane person."

John A. Hinkle testified that he was sheriff, and brought defendant back from Neosho, Mo.   Had conversation with defendant yesterday, and defendant understood all that was said to him.

Upon this testimony the court, over the objections of the state, instructed the jury as follows:

No. 1.   "Gentlemen of the jury, this is an inquiry as to the sanity or insanity of P. B. Helm.   You are instructed that if you find, from a preponderance of the evidence in this case, that the defendant is now so afflicted with mental disease that when informed by the court of the nature of the indictment, his plea and the verdict of conviction thereon, and of the effect and consequences thereof, he would not intelligently understand, intelligently reason and intelligently comprehend such matters, you would be authorized to find him insane; on the other hand, unless you believe, by a preponderance of the evidence, that he is so afflicted by mental disease, when informed by the court of the indictment, the plea, the effect of a conviction thereon, and the consequences thereof, he would not intelligently understand, intelligently reason or intelligently comprehend the matters, you would be authorized to find him sane."

Were the proceedings of the court in accordance with law, and was the jury correctly instructed?

The statutes of this state provide as follows:   "When the defendant appears for judgment, he must be informed by the court of the nature of the indictment, his plea, and the verdict thereon, if any, and he must be asked if he has any legal cause to show why judgment should not be pronounced against him.   He may show for cause against the judgment any sufficient ground for a new trial, or for arrest of judgment.   He may also show that he is insane.   If the court is of opinion that there is reasonable ground

for believing he is insane, the question of his insanity shall be determined by a jury of twelve qualified jurors, to be summoned and impaneled as directed by the court. If the jury do not find him insane, judgment shall be pronounced. If they find him insane, he must be kept in confinement, either in the county jail or lunatic asylum, until, in the opinion of the court, he becomes sane, when judgment shall be pronounced." Sand. & H. Dig., §§ 2284-2286.

These statutes do not require that insanity shall be shown by any formal plea; and we can see no good reason why it may not, and think it may, be adequately shown orally. *State* v. *Reed,* 41 La. An. 581, 583; *State* v. *Peacock,* 50 N. J. Law, 34. Upon it being shown, it is the duty of the court to inquire into the truth of the allegation, and, if it finds that there is reasonable grounds for believing it, to order a jury to be impaneled to determine the question. The manner and extent of the injury are left to the sound discretion of the court. The record fails to show any error committed by the court in the submission of the question to a jury.

Did the court instruct the jury correctly?

In *Freeman* v. *People,* 4 Denio, 19, Justice Beardsley, in delivering the opinion of the court, said: "The statute declares that 'no insane person can be tried, sentenced to any punishment, or punished for any crime or offence, while he continues in that state.' (2 R. S. 697, § 2.) This, although new as a legislative enactment in this state (3 *id.* 832), was not introductory of a new rule, for it is in strict conformity with the common law on the subject. 'If a man,' says Sir William Blackstone, 'in his sound memory commits a capital offence, and before arraignment for it he becomes mad, he ought not to be arraigned for it; because he is not able to plead to it with that advice and caution that he ought. And if, after he has pleaded, the prisoner becomes mad, he shall not be tried; for how can he make his defense? If, after he be tried and found guilty, he loses his senses before judgment, judgment shall not be pronounced; and if, after judgment, he becomes of non-sane memory, execution shall be stayed, for peradventure, says the humanity of the English law, had the prisoner been of sound memory, he might have alleged something in stay of judgment or execution. Indeed,' it is added, 'in the bloody reign of Henry the Eighth, a statute was made which enacted that if a person, being *compos mentis,* should commit high treason, and after fall into

madness, he might be tried in his absence, and should suffer death, as if he were of perfect memory. But this savage and inhuman law was repealed by the statute of 1 and 2 Ph. and M. c. 10. For, as is observed by Sir Edward Coke, 'the execution of an offender is for example, *ut poena ad paucos, metus ad omnes perveneat;* but so it is not when a madman is executed, but should be a miserable spectacle, both against law, and of extreme inhumanity and cruelty, and can be no example to others.' 4 Bl. Com. 24. The true reason why an insane person should not be tried is that he is disabled by an act of God to make a just defense if he have one. As is said in 4 Harg. State Trials, 205, 'there may be circumstances lying in his private knowledge, which would prove his innocency, of which he can have no advantage, because not known to the persons who shall take upon them his defense.' The most distinguished writers on criminal jurisprudence concur in these humane views, and all agree that no person, in a state of insanity, should ever be put upon his trial for an alleged crime, or be made to suffer the judgment of the law. A madman cannot make a rational defense, and as to punishment *furiosus solo furore punitur.* 1 Hale, P. C. 34, 35; 4 Bl. Com. 395-6; 1 Ch. C. L. (Ed. 1841), p. 761; 1 Russ. on C. (Ed. 1845), p. 14; Shelf. on Lunacy, 467-8; Stock. on Non-Com. 35-6."

Again he says: "The statute, before cited, is emphatic that no insane person can be tried. In its terms the prohibition is broad enough to reach every possible state of insanity, so that, if the words are to be taken literally, no person while laboring under insanity in any form, however partial and limited it may be, can be put upon his trial. But this the legislature could not have intended; for, although a person totally bereft of reason cannot be a fit subject for trial and punishment, it by no means follows that one whose insanity is limited to one particular object or conceit, his mind in other respects being free from disease, can justly claim the like exemption. This clause of the statute should receive a reasonable interpretation, avoiding on the one hand what would tend to give impunity to crime, and on the other seeking to attain the humane object of the legislature in its enactment. The common law, equally with this statute, forbids the trial of any person in a state of insanity. This is clearly shown by authorities which have been referred to, and which also show the reason for the rule, to-wit, the incapacity of one who is insane to make a rational defense. The statute is in affirmance of this common law

principle, and the reason on which the rule rests furnishes a key
to what must have been the intention of the legislature.   If, there-
fore, a person arraigned for a crime is capable of understanding
the nature and object of the proceedings going on against him; if
he rightly comprehends his own condition in reference to such pro-
ceedings, and can conduct his defense in a rational manner, he is,
for the purpose of being tried, to be deemed sane, although on
some other subjects his mind may be deranged or unsound.   This,
as it seems to me, is the true meaning of the statute; and such is
the construction put by the English courts on a similar clause in an
act of parliament."

The intention of the statutes of this state and of New York
is the same.   What was said of the New York statute in *Free-
man* v. *People* can be truthfully said of the statute of this state.
The statutes of both states, so far as they severally extend, are en-
actments of the common-law rule which forbids the trial of any
person, or the pronouncement of judgment against him, while he
is in a state of insanity.   The reason of the rule for prohibit-
ing the trial while he is insane is the incapacity of one who is
insane to make a rational defense, and for prohibiting the
pronouncement of judgment against him while he is insane is, if
sane, he might be able to show cause why judgment should not
be pronounced against him, but, being insane, though having a
sufficient cause, he might not make it known.   The statute being
an affirmance of the common-law rule, the reason on which the
rule rests furnishes a key to what must have been the intention
of the legislature in adopting it.   We therefore, conclude and de-
cide that, if a person convicted of a crime is by reason of a dis-
ease of the mind unable to understand the nature of the indict-
ment upon which he was convicted, his plea thereto, and the ver-
dict thereon, when explained to him by the court, and is unable to
comprehend his own condition in reference to such proceeding,
and by reason thereof might not make known to the court or the
attorneys in charge of his defense the facts within his knowledge,
if any, which would show that judgment should not be pronounced
against him, he is, as to the pronouncing of such judgment, to
be deemed insane, within the meaning of the statute.   Ignorance
of the law is not competent or sufficient to show such incapacity.
The requirement of the statute which makes it the duty of the
court to inform him of the nature of the indictment, his plea, and
the verdict sustains this view.   This information could not sub-

serve its purpose, and the giving of it would be a useless formality, if he is insane to the extent he must be to come within the meaning of the statute as we have indicated; but, if not insane to such extent, it would accomplish its purpose, and he would be competent to hear the judgment of the court pronounced against him.

The instruction given to the jury by the court is ambiguous, and is not in full accord with this opinion. It authorized the jury to find the defendant insane, if they found from the preponderance of the evidence that he could not "intelligently reason." Under the evidence adduced it was reasonably calculated to induce the jury to believe that he should be possessed of more intelligence and mental capacity at the time judgment is pronounced against him, as a prerequisite to such proceeding, than is necessary; and it should not have been given.

The judgment of the court upon the verdict of the jury as to the sanity of the prisoner is, therefore, set aside; and the circuit court is directed to pronounce judgment against him upon the verdict finding him guilty of forgery, unless in the opinion of the court there is reasonable ground for believing he is insane, and, in that event, to proceed according to this opinion.