FERGUSON *v.* MARTINEAU, CHANCELLOR.

Opinion delivered November 20, 1914.

1. SUPREME COURT—JURISDICTION OVER COUNTY AND PROBATE COURTS—WRIT OF PROHIBITION.—The Supreme Court has no original jurisdiction to control or supervise any proceedings of the probate court. The supervisory jurisdiction of the Supreme Court over the probate court comes, not originally, but by way of appeal and supervision through the circuit courts.

2. EQUITY JURISDICTION—CRIMINAL PROCEEDINGS—INJUNCTION.—Courts of equity have to do with civil and property rights and they have no jurisdiction to interfere by injunction with criminal proceedings. They can not stay processes of courts having the exclusive jurisdiction of criminal matters, when no civil or property rights are involved.

3. WRIT OF PROHIBITION—NATURE OF.—A writ of prohibition is that process by which a superior court prevents an inferior court or tribunal from usurping or exercising jurisdiction with which it has not been vested by law.

4. EQUITY JURISDICTION—CRIMINAL PROCEEDINGS—WRIT OF PROHIBITION. When the want of jurisdiction on the part of a chancery court to restrain the execution of a criminal judgment of the circuit court, appears on the face of the proceedings, and a writ of prohibition to quash and to restrain the enforcement of the order of the chancery court will be issued.

5.  EQUITY JURISDICTION—INJUNCTION—ORDER OF PROBATE COURT—INSANITY.—The chancery court is without jurisdiction to issue an injunction restraining the execution of a criminal under a judgment of the court to enable the probate court to inquire into the sanity of the convicted felon.

6.  INSANITY—CONVICTED FELON—JURISDICTION OF PROBATE COURT.—The probate court has no jurisdiction under Kirby's Digest, § 4003, to determine the issue of the sanity of one who has been convicted and sentenced to be executed for a criminal offense, and who is already in the custody of the law for that purpose.

7.  INSANITY—CONVICTED FELON—POWER OF SHERIFF.—Under Kirby's Digest, § 2454 and Act 55, Acts of 1913. the sheriff may, upon information that a person under sentence of electrocution is insane, make inquiry, and if refused the custody of the prisoner, for that purpose may invoke the aid of the circuit court, or the judge of the court in vacation, to have the custody of the prisoner surrendered to him for the purpose of making the inquisition as to his alleged insanity.

8.  INSANITY—CONVICTED FELON—COMMON LAW REMEDY.—The circuit court, or judge thereof, in vacation, has the inherent power, even in the absence of a statute, to say that the execution of a judgment of that court was not in force upon a person who was insane at the time set for his execution; and when it is alleged that a prisoner, under sentence of electrocution, is insane, upon proper application a writ may be issued by the court or judge thereof, returnable to the court to inquire into the alleged insanity of the prisoner, at the time set for his execution.

Prohibition to Pulaski Chancery Court; *John E. Martineau,* Chancellor; petition sustained as against the chancellor; denied as to the county judge.

STATEMENT BY THE COURT.

One Arthur Hodges was convicted of murder in the first degree in the Clark Circuit Court. He appealed to this court and the judgment of the circuit court was affirmed. After the judgment of the Clark Circuit Court, Hodges made application to that court for a writ of *coram nobis* to inquire into the issue of his sanity at the time of the alleged offense for which he was convicted. The writ was issued, and upon a trial of that issue before a jury it was determined that Hodges was sane. Hodges was then conveyed to the State penitentiary and delivered to the superintendent thereof to await his execution

under the provisions of the act approved February 15, 1913, Act 55, of the Acts of 1913.

On the 6th day of November, 1914, upon the petition of W. M. Rankin, with accompanying affidavits, setting forth that Arthur Hodges is now insane, and asking that inquiry be made into the question of his sanity at the present time, the county and probate judge of Pulaski County, upon consideration of the petition, granted the same and ordered a warrant to issue for the arrest of Arthur Hodges, and directed the sheriff to have him before the probate court on the 23d day of November, 1914, to have the question of his sanity determined.

On the 7th of November, 1914, application was made to the chancery court of Pulaski County for an injunction against the Commissioners of the Arkansas Penitentiary, restraining them from executing Hodges on the day set for his execution. The chancery court granted the petition and issued an order enjoining the commissioners from executing Hodges on the 14th day of November, 1914, or on any other date until the further orders of the chancery court.

The petitioners apply to this court for writs of prohibition, directed to the judge of the chancery court of Pulaski County and to the judge of the county and probate court of said county, prohibiting them from interfering with the execution of Arthur Hodges on the day set for his execution under the sentence and judgment of the Clark Circuit Court.

The judge of the probate court of Pulaski County set up, in response to the petition, that the writ of prohibition should not issue for the reason that this court has no jurisdiction to issue a writ prohibiting the probate court of Pulaski County from exercising its jurisdiction to inquire into the question of the sanity of Hodges, and further set up that he had such jurisdiction and that he had exercised it for good cause shown. The chancellor of the Pulaski Chancery Court responded that he issued the injunction restraining the commissioners from executing Hodges until his sanity could be deter-

mined by the probate court on the 23d day of November, 1914, the day set by that court for the inquisition; that he had issued all the orders that he could issue or would issue and that the petitioners, if aggrieved by his action, had their remedy by way of appeal, and not by writ of prohibition.

For the convenience of hearing, the cases are consolidated here and disposed of in one opinion.

*Wm. L. Moose,* Attorney General, and *Jno. P. Streepey,* Assistant, for petitioners.

Section 4003 of Kirby's Digest, under which the probate court is proceeding, is manifestly not intended to apply to the case of a person in the custody of the law, who has been convicted of a criminal offense, and is awaiting the punishment provided by law.

The law has thrown ample safeguards around insane persons charged with violations of the criminal laws, whereby they are protected, if insane at the time of the commission of the crime, or afterwards become insane. Kirby's Dig., § § 2227, 2418, 2440, 2454. If these safeguards are not sufficient, it is not the province of the court to add to them.

*Jones & Owens* and *Bradshaw, Rhoton & Helm,* for respondents.

1. As to the probate court, this court is without jurisdiction to issue the writ. 75 Ark. 510.

2. Since the act requiring that the death penalty be inflicted upon persons convicted of capital crimes by electrocution at the State penitentiary makes no provision for inquiring into the sanity of a condemned person by the commissioners thereof, there is no one who has authority to determine that question except the probate court of the county where such person is, and we therefore contend that the probate court of Pulaski County has such authority under section 4003 of the digest.

3. The chancellor has done all that he proposes to do or can do in issuing the restraining order. The pur-

pose of the writ of prohibition is not to correct error, but wholly to prevent a court from doing that which it has no power to do.

Until this court has determined that the probate court erred in assuming jurisdiction to inquire into the sanity of Hodges, which can only be done after the question is presented through the proper forum, the circuit court, it must be assumed that the probate court acted within its jurisdiction. Such being the case, the plaintiffs were threatening to do, and were about to do, that which was unlawful and wrong, and the chancery court had the right, and it was within his power and jurisdiction, to issue the restraining order. Martin's Chancery Decisions, 566, and notes; 143 Ind. 98, 52 Am. St. Rep. 407; 66 Ark. 211-214; 56 Mo. 332; 88 Wis. 255; 96 Ark. 332-359.

WOOD, J. (after stating the facts). (1) In *Featherstone* v. *Folbre,* 75 Ark. 510-512, we said: "This court has no original jurisdiction to control or supervise any proceedings of the probate court. That all belongs to the circuit courts, as matters of original jurisdiction, and to this court by appellate or supervisory jurisdiction over the circuit courts. This court supervises and controls all courts inferior to the circuit courts only through the latter courts. In no other way can the harmony of our judicial system, as at present constituted, be preserved."

In the same case we held that the supervisory jurisdiction of this court over the probate court "comes, not originally, but by way of appeal and supervision through the circuit courts."

It follows that this court has no jurisdiction to issue the writ of prohibition in this case, directed to the probate court. If the application for a writ of prohibition directed to the probate court had been first made in the circuit court and refused, then this court would have jurisdiction by reason of its superintending control over the circuit court, but this was not done.

The petition for the writ of prohibition directed to the probate court must be denied.

(2) Courts of equity have to do with civil and property rights, and they have no jurisdiction to interfere by injunction with criminal proceedings. They can not stay processes of courts having the exclusive jurisdiction of criminal matters, where no civil or property rights are involved. *Portis* v. *Fall, et al.* 34 Ark. 375; *Medical and Surgical Institute* v. *Hot Springs,* 34 Ark. 559; *Taylor Cleveland & Co.* v. *Pine Bluff,* 34 Ark. 603; *Waters-Pierce Oil Co.* v. *City of Little Rock,* 39 Ark. 412; High on Injunctions, § 68; Kerr on Injunctions in Equity, p. 2, star; 1 Wharton Cr. Law, § 403.

This court in *State* v. *Vaughan,* 81 Ark. 125, quoting from the Illinois Supreme Court, said: "It is elementary law that the subject-matter of the jurisdiction of the court of chancery is civil property. * * * The court has no jurisdiction in matters merely criminal or merely immoral, which do not affect any right to property. It is no part of the mission of equity to administer the criminal law of the State. A court of equity has no jurisdiction over matters merely criminal or merely immoral."

The Supreme Court of the United States, *In re Sawyer,* 124 U. S. 200-209-210, says: "The office and jurisdiction of a court of equity, unless enlarged by express statute, are limited to the protection of rights of property. It has no jurisdiction over the prosecution, punishment or pardon of crimes and misdemeanors, or over the appointment or removal of public officers. To assume such a jurisdiction or to sustain a bill in equity to restrain or relieve against proceedings for the punishment of offenses, or for the removal of public officials, is to invade the domain of the courts of common law, or of the executive and administrative departments of the government." See also *Fitts* v. *McGhee,* 172 U. S. 516; 6 Pom. Eq. Jur., § 644, and authorities cited. Such suit is in effect a suit against the State.

It follows that the chancery court was wholly without jurisdiction to stay the execution of the judgment of the Clark Circuit Court.

(3) "The writ of prohibition is that process by which a superior court prevents an inferior court or tribunal from usurping or exercising jurisdiction with which it has not been vested by law." 2 Spelling on Injunctions and Other Extraordinary Remedies, § 1716. See also Shortt on Informations, Mandamus and Prohibition, p. 436.

(4) Here the want of jurisdiction on the part of the chancery court appears on the face of the proceedings, and the writ of prohibition to quash and to restrain the enforcement of its orders will go.

Learned counsel for the respondents insist that the writ should not be issued in this case because the chancellor shows that he has done everything that he proposes or can do in the matter. But the injunction issued by the chancellor is outstanding, and it will be presumed that unless recalled, the officers will obey the same, or, if they do not, the chancellor will proceed to punish them for contempt of court in disobedience of his order.

"If," said Lord Mansfield, "it appears from the face of the proceedings that the court below has no jurisdiction, a writ of prohibition may issue at any time either before or after sentence, because all is a nullity; it is *coram non judice.*" *Bedgin* v. *Bennett,* 4 Burr. 2037; Shortt on Information, etc., § 447, and cases cited in note.

(5) It is further insisted that the chancery court had jurisdiction to issue the injunction ancillary to or in aid of the jurisdiction of the probate court to enable it to enforce its orders. The chancery court has no such jurisdiction; but if it were conceded that the chancery court had such jurisdiction, the injunction could not properly issue in aid of the probate court's jurisdiction, for the probate court itself was without jurisdiction. The statute under which the respondents claim that the probate court has jurisdiction, towit: section 4003 of Kirby's Digest, is as follows:

"If any person shall give information in writing to such court that any person in his county is an idiot, lunatic, or of unsound mind, and pray that an inquiry thereof be had, the court, if satisfied that there is good cause for the exercise of its jurisdiction, shall cause the person so charged to be brought before such court, and inquire into the facts by a jury, if the facts be doubtful."

(6)   This statute was enacted solely for the purpose of protecting the civil and property rights of insane persons, as is clearly shown by the section itself and the other sections of the same chapter (chap. 83, Kirby's Dig.) It has no reference whatever to determining the issue of the sanity of one who has been convicted and sentenced to be executed for a criminal offense, and who is already in custody of the law for that purpose.

It is further contended that the injunction should go because if Hodges is now insane he has no other legal remedy than to apply to the probate court and to the chancery court as he has done and that a great wrong would be perpetrated upon him for which there was no other remedy.

Section 2454 of Kirby's Digest provides that, when the sheriff is satisfied that there are reasonable grounds for believing that the defendant is insane he may summon a jury to inquire as to his insanity, and if the jury finds that he is insane, then the sheriff shall suspend the execution and immediately transmit the inquisition to the Governor.

The respondents contend that this section has been repealed by  Act 55 of the Acts of 1913, providing that "when a judgment of death is pronounced upon any person upon conviction of a capital offense, said person shall be immediately conveyed to the State penitentiary and there kept awaiting execution," etc.   And also that the "said superintendent or the assistants appointed by him, shall proceed, unless a suspension of execution be ordered, at the time named in said sentence, to cause the said felon under sentence of death to be  electrocuted until he is dead."

(7)   There is no express repeal of the statute conferring power upon the sheriff of the county where the defendant has been convicted of inquiring into his sanity at the time set for his execution, and the statute conferring upon him such power is not repealed by implication, and if it came to his knowledge that the defendant was insane at the time set for his execution the sheriff would still have the power to make the inquiry, and if the superintendent of the penitentiary should refuse him the custody of the prisoner for that purpose he could invoke the aid of the circuit court or the judge of that court in vacation to have the custody of the prisoner surrendered to him for the purpose of making the inquisition as to his alleged insanity. But, if it be conceded that Act 55 of the Acts of 1913, *supra,* repealed, by implication, the statute conferring such power upon the sheriff, still there would be an adequate remedy for the defendant at the common law, in the absence of any statute upon the subject, for all of our statutes passed for the protection of insane persons against the punishment that the law would otherwise inflict upon them for the commission of criminal offenses, are but declaratory of the common law, or cumulative of the remedies that were there provided for their protection in such cases.

In *Taffe* v. *State,* 23 Ark. 34, this court said: "The first principles of the elementary books are, that whenever a person is disqualified from defending himself, by the loss or want of reason, he shall not be the subject of a legal prosecution or penalty." And, further, quoting from 4 Blk. Com. 24 and 395: "If a man in his sound memory commits a capital offense, and before his arraignment he become absolutely mad, he ought not by law, to be arraigned during such his frenzy, but be remitted to prison until that incapacity be removed; the reason is because he can not advisedly plead to the indictment; and this holds as well in cases of treason, as felony, even though the delinquent in his sound mind were examined, and confessed the offense before his arraignment. And if such person, after his plea and before his trial, be-

come of nonsane memory, he shall not be tried; or, if after his trial he becomes of nonsane memory he shall not receive judgment; or, if after judgment he becomes of nonsane memory, his execution shall be spared; for were he of sound memory, he might allege somewhat in stay of judgment or execution."

See also *State* v. *Helm,* 69 Ark. 167-171.

(8)   It can not be doubted, therefore, that even in the absence of any statute upon the subject, the circuit court or judge thereof, in vacation, would have the inherent power to say that the execution of the judgment of that court was not in force upon a person who was insane at the time set for his execution. A writ upon proper application could be issued by the court or the judge thereof, returnable to the court to inquire into the alleged insanity of the prisoner at the time set for the execution to the end that the sentence of the law might not be carried out if it were determined by a jury empaneled for the purpose that the defendant were insane. See *Adler* v. *State,* 35 Ark. 517; *Steward* v. *State,* 124 Wis. 623; 4 A. & E. Ann. Cases, 389, note on p. 393.

Therefore, there is a complete and adequate remedy at law and there was no reason to justify the issuance of the injunction, even if the chancery court had jurisdiction to do so.

The writ of prohibition will therefore be granted and the injunctive order of the chancery court will be quashed.