[No. 3322.    Decided July 24, 1899.]

THE STATE OF WASHINGTON, *Respondent,* v. CHARLES W.
NORDSTROM, *Appellant.*

CRIMINAL LAW—INSANITY ARISING AFTER SENTENCE—INQUISITION—
    DISCRETION OF COURT.

Where, after sentence of death upon a prisoner, his insanity is
alleged, and the court has satisfied itself of the prisoner's sanity,
either through its own examination or through that of a commis-
sion appointed for the purpose, the action of the court in refusing
the prisoner a trial in which he would have the right to be repre-
sented by counsel and to examine witnesses, is not reviewable on
appeal.

Appeal from Superior Court, King County. — Hon.
ORANGE JACOBS, Judge.    Appeal dismissed.

*James Hamilton Lewis,* for appellant.
*James F. McElroy* and *John B. Hart,* for the State.

The opinion of the court was delivered by

ANDERS, J.—The appellant, Charles W. Nordstrom, was
tried in the superior court of King county on a charge of
murder in the first degree, and on January 13, 1892, the
jury returned a verdict of guilty as charged.    On April
2, 1892, he was adjudged guilty and sentenced to be
hanged on a day to be fixed by the court.    He thereafter
appealed from the judgment of conviction to this court,
and this court, after argument and due consideration,
affirmed the judgment.    He thereupon removed the cause
to the supreme court of the United States, where the judg-
ment of this court was affirmed.    He thereafter applied to
the circuit court of the United States for the district of
Washington, Northern Division, for a writ of *habeas cor-
pus.*    His application was denied by said court and the
proceeding dismissed, whereupon he appealed to the su-

preme court of the United States, which court affirmed the decision of the said circuit court. The mandate of the supreme court of the United States in the *habeas corpus* proceeding was filed in said circuit court on March 8, 1899, and on March 11, 1899, a regularly certified copy thereof was filed in the superior court of King county. Soon thereafter the prosecuting attorney in and for said county moved the superior court for an order fixing the day for carrying into effect the judgment and sentence theretofore passed on the defendant. This application on the part of the state was continued from time to time at the request of counsel for the defendant (appellant here), until the 15th day of May, 1899, at which time the superior court entered its order and signed a death warrant, directing that the said Nordstrom be executed in the manner provided by law, on Friday, the 11th day of August, 1899. During the pendency of the motion for fixing the day of execution, the appellant, through his counsel, suggested to the court, and supported the suggestion by an affidavit, that the defendant had become insane since the judgment and sentence of the court, and therefore requested a stay of the order and warrant of execution. The court, in order to satisfy its mind and conscience as to the sanity or insanity of the defendant, appointed a commission consisting of five expert physicians and alienists to examine the defendant and to report to the court his present mental condition. According to the record, this commission was appointed with the concurrence of counsel for defendant and for the state. The commission reported to the court, in substance, that they had carefully examined the said Nordstrom and had taken the testimony of the officials who had had him in charge since his conviction, and that they found him capable of distinguishing between right and wrong, and that, so far as they were able to ascertain, his mental condition was

the same as it was at the time of the trial.    Upon hearing and considering this report, the court became satisfied that the defendant was of sane mind, and therefore proceeded, over the objection and protest of counsel for defendant, to fix a day for carrying the judgment and sentence into effect in accordance with the provisions of the statute. The learned counsel for the defendant moved the court to set aside the report of the physicians, and asked to have the question of the sanity or insanity of the defendant determined by some tribunal or body in which or before whom the defendant might be represented by counsel and produce such witnesses as he desired.    The court denied the motion, and the counsel thereupon gave notice of appeal to this court from the action of the superior court, (1) in refusing him a hearing upon his petition setting forth insanity, (2) in denying the motion to set aside the report of the commission, and (3) in overruling the defendant's objection to the court's taking jurisdiction of the matter and denying the motion to suspend and stay the proceeding for want of jurisdiction over the person of the defendant.    The counsel for the state have moved to dismiss this appeal mainly upon the ground that the orders, rulings and acts of the superior court in setting a time for the carrying into effect the death sentence is not reviewable under the law of this state.    Counsel for appellant have filed a motion to strike the motion to dismiss from the files on the ground that it is not authorized by law.    But it is sufficient to say, regarding this latter motion, that, if the motion to dismiss is well founded, it cannot be stricken, and if, on the contrary, it is not well taken, it will be denied.

The question presented for our determination is one of first impression in this court.    It is conceded that no method of procedure in cases like the present is provided by statute in this state.    The question as to whether the

action of the court below which is objected to by appellant is reviewable by this court involves somewhat the question whether the appellant had or had not the right to have the question of his present mental condition ascertained by a regular trial, either before a jury or in some other method known to the law. No case has been cited by counsel in which the facts were similar to those in this case, though several are referred to where the question of the trial of the defendant's sanity in criminal cases is discussed. In most of the cases, however, the suggestion of present insanity was made either at the time of the trial or after verdict and before sentence. We think the modern authorities are generally to the effect that the court is not bound to order a trial of the question if it has no reasonable doubt as to the sanity of the defendant. At common law it appears that if the prisoner, when called to the bar for sentence, appeared to be insane, the judge might, in his discretion, reprieve him until he regained his senses. 4 Blackstone, Commentaries, p. 396.

In *Spann v. State,* 47 Ga. 549, which is more nearly in point than any other case which has been cited, it is said, on the authority of Coke, that the stay of execution for insanity depends on the discretion of the judge at common law. It is not claimed by the learned counsel for the appellant in this case that the appellant had an absolute right to a trial by jury of the question of his sanity, but the contention is that he had the right to have the question determined "judicially," and that the court refused to accord him that right in this instance. But we are of the opinion that the question, at the time it was presented, was one resting exclusively within the discretion of the court, and that the appellant had no absolute right to a trial by jury or otherwise, the court being satisfied of his sanity.

It is said in 10 Enc. Pl. & Pr., p. 1220:

" Where, however, no doubt on the part of the court is created as to the sanity of the defendant, it is under no obligation to have the question determined by a preliminary investigation. The method of determining the preliminary question of insanity, where not the subject of statutory regulation, is largely within the discretion of the court, which may itself enter upon the inquiry, or adopt some other mode without the aid of a jury."

See, also, *State v. Peacock,* 50 N. J. Law, 653 (11 Atl. 270); *Bonds v. State,* 1 Mart. & Y. 143 (17 Am. Dec. 795); *People v. Pico,* 62 Cal. 50; *Commonwealth v. Schmous,* 162 Pa. St. 326 (29 Atl. 644); *State v. Judge,* 48 La. An. 503 (19 South. 475).

At common law, dicisions and rulings like those now under consideration were, of course, not subject to review, and, if reviewable at all, the authority therefor must be found in our statute. We find no express statutory provision, and we do not think that any provision of the statute relating to appeals is applicable to a case like this. It is true that the statute provides for appeals from final orders after judgments affecting substantial rights. Bal. Code, § 6500. But it is manifest, we think, that the orders there contemplated are not, as are these, collateral to the main case or proceeding before the court; and elsewhere the decisions, so far as we are informed, have been adverse to the contention of the appellant. Mr. Buswell, in speaking of insanity in bar of sentence, says:

" So, where, after the verdict and judgment, the defendant by his counsel alleged as a reason why sentence should not be pronounced that the defendant was a lunatic, it was held that if the court on its own inspection was satisfied that the allegation of insanity was false, it might properly proceed to pass sentence without empaneling a jury to try the question. But it was added, that if the court should entertain any doubt on the subject, or the question should appear difficult, a *venire* should issue, returnable *instanter,* to ascertain the fact. And the question whether an in-

quiry is called for by the circumstances of the case is for the determination of the court, who may also direct the manner in which such inquiry shall be conducted.    Error will not lie to review the proceedings upon such an inquiry, whether the allegation of insanity be made before or after the conviction of the prisoner."    Buswell, Insanity, § 461.

See *Inskeep v. State,* 35 Ohio St. 482; 36 Ohio St. 145; also, *Freeman v. People,* 4 Denio, 9 (47 Am. Dec. 216).

In *Darnell v. State,* 24 Tex. App. 6 (5 S. W. 522), the court of appeals of Texas held that the judgment of the trial court upon an inquiry, after conviction, as to the question of insanity, was conclusive, and that no appeal would lie therefrom.    While this decision is based upon a statute of that state, it would seem that it is equally supported by common sense and sound reason.    In *Spann v. State, supra,* the defendant, after his conviction of the crime of murder, and after he had been sentenced to be hanged, was alleged to have become insane.    The sheriff, with the concurrence and assistance of the ordinary of the county, proceeded, under a provision of the Code, to summon a jury to inquire into such insanity, and the defendant applied to the superior court for a writ of certiorari to review the proceedings before the ordinary, which court refused the writ and held that certiorari would not lie. The supreme court, in the course of its opinion in that case, observed:

" The whole proceeding is merely a stay of execution, and is based rather upon the public will, and a sense of propriety, than on any right in the prisoner.    .    .    . It is rather a perversion of terms to call an inquisition of this kind the act of a court, and to exercise in reference to it the writ of *certiorari.*    The whole proceeding is rather an inquiry based on public propriety and decency, than a matter of right, and whilst I do not say that *certiorari* will not lie at all, yet, for myself, I greatly doubt if such was the intent of the lawmakers."

The court, however, notwithstanding its great doubt upon the question, did look into the matter as presented and affirmed the judgment of the lower court.    As said by the supreme court of Pennsylvania in *Laros v. Commonwealth,* 84 Pa. St. 200:

" The plea (of insanity) at this stage is only an appeal to the humanity of the court to postpone the punishment until a recovery takes places, or as a merciful dispensation. The rights of the prisoner as an offender on trial for an offense are not involved.    He has had the benefit of a jury trial, and it is now the court only which must be satisfied on the score of humanity.    If the right of trial by jury exist at all, it must exist at all times, no matter how often the plea is repeated alleging insanity occurring since the last verdict.    Such a right is inconsistent with the due administration of justice.    There must be a sound discretion to be exercised by the court.    If a case of real doubt arise, a just judge will not fail to relieve his own conscience by submitting the fact to a jury."

In the case at bar the learned judge of the superior court simply undertook, as stated in his opinion filed in the cause, to satisfy his own mind and conscience as to the question of appellant's alleged insanity; and we think that, under the authorities, he was clearly justified in resorting to the means adopted.    The appointment of the commission and the investigation made by them was not deemed or intended to be a trial in any sense of the word.    It was simply, in our judgment, the proper exercise of a discretionary power.

It was held in the case of *Webber v. Commonwealth,* 119 Pa. St. 223 (13 Atl. 427, 4 Am. St. Rep. 634), where insanity was alleged at the time of the arraignment of the accused, that the court might determine the condition of the prisoner's mind by a personal inspection and examination of him, either public or private; by inquiry from attending physicians, or from those around the prisoner who have means of knowledge; and if, after such investi-

gation and inquiry, the judge has no doubt of the prisoner's sanity, he is neither bound, nor would he be justified in ordering an inquest; and the court there observed "that it is the judicial conscience alone which can determine this question, and it is that conscience only which must be informed so that it may act intelligently."

Our conclusion is that the action of the learned trial court in the premises is not subject to review by this court, and the motion to dismiss is, therefore, granted.

Gordon, C. J., and Fullerton, Reavis and Dunbar, JJ., concur.