No. 10,575.

TURLEY v. THE PEOPLE.

Decided June 4, 1923. Rehearing denied July 2, 1923.

Plaintiff in error was convicted of murder.

*Affirmed.*

*On Application for Supersedeas.*

1.  CRIMINAL LAW—*Change of Venue.* The question of the existence of such prejudice as would require a change of venue is one of fact, the determination of which rests in the sound discretion of the court, and no abuse of discretion appearing, consideration of the question on review is foreclosed.

2.  *Evidence—Insanity.* Expert testimony having been introduced that the defendant in a homicide case was insane prior to, at the time of, and ever since the commission of the crime, the record of a lunacy inquest wherein defendant was found to

be sane within a period covered by his defense, held admissible.

3. INSANE PERSONS—*Statutes—Construction.* Sections of the statute governing proceedings in lunacy cases, chapter 18, C. L. '21, discussed and construed.

4. *Person Interested—Officials.* A public official who is charged with the protection of life and property is a "person interested" in lunacy proceedings affecting a defendant in a criminal case, as that term is used in § 558, C. L. '21.

5. *Witnesses.* A non-expert witness may never, in response to purely hypothetical questions, be permitted to give an opinion on the question of sanity. But when he shows a personal acquaintance with the alleged insane person, after detailing the facts and circumstances surrounding his acquaintance, and the acts, conduct and conversations upon which his conclusion is based, he may give his opinion.

6. EVIDENCE—*Order of Proof.* It is contrary to the established rules governing the orderly progress of trials for a party to split his evidence, and in the trial of a homicide case, expert testimony supporting the defense of insanity having been introduced in order, it is held that there was no error in the exclusion of testimony of lay witnesses offered by the defense on surrebuttal, touching the same subject. Further, that that matter rested in the sound discretion of the court.

7. CRIMINAL LAW—*Demonstration by Spectators.* Whether or not a demonstration by spectators during the progress of a criminal trial is prejudicial to the rights of the defendant, is a matter within the discretion of the trial court. In the instant case, the holding of the court that no prejudice resulted, is not disturbed.

8. *Homicide—Instructions—Verdict.* An instruction of the court in this case authorizing the jury to return a verdict of murder in the second degree, held not error. The rule laid down on the question in *Dickens v. People*, 67 Colo. 409, not applicable where there is a verdict of first degree murder.

9. APPEAL AND ERROR—*Sufficiency of Evidence.* After a review of the record in a homicide case, it is held that the evidence was ample to justify a verdict of guilty.

10. PRACTICE AND PROCEDURE—*New Trial.* The rule concerning motions for a new trial is the same in civil and criminal cases, and questions presented by such a motion which is not filed in apt time, will not be considered on review.

11. *Arrest of Judgment.* A motion for arrest of judgment must be based upon matters appearing of record. Evidence forms no part of the record, and a judgment will not be arrested under a motion based thereon.

*Error to the District Court of the City and County of Denver, Hon. Charles C. Butler, Judge.*

Messrs. SNAVELY & SNAVELY, Messrs. DEWEESE, WHEELER & OGLE, for plaintiff in error.

Mr. RUSSELL W. FLEMING, attorney general, Mr. JOSEPH P. O'CONNELL, assistant, for the people.

*En banc.*

MR. JUSTICE BURKE delivered the opinion of the court.

PLAINTIFF in error, hereinafter referred to as defendant, was tried for the murder of Emma G. Wise. The jury returned him guilty in the first degree and fixed the punishment at imprisonment for life. Sentence was pronounced by the court accordingly and to review that judgment he sues out this writ and asks that it be made a supersedeas. Defendant further requests, and the Attorney General consents, that the cause be finally disposed of on this application.

Deceased disappeared June 13, 1922. June 15, defendant appeared at police headquarters seeking a warrant for her arrest for the sale of mortgaged property. About 11 p. m. of the same day he was placed under arrest but denied all knowledge of the whereabouts of deceased. On Saturday the 17th, the officers, having learned that defendant was taking care of a residence in the city, visited the locality, obtained a key from a neighbor, searched the place and found the body of deceased concealed in one of the ventilating pipes of the furnace. Defendant, it developed, held a lease on this property. Upon further examination he admitted the identity of the body and confessed that he had taken Mrs. Wise to this house on the 13th, obtained her signature to a bill of sale for certain rooming

house property and a check for about $380, after which he struck her, choked her into unconsciousness, tied a rope around her neck, pushed the body down the ventilating pipe, tied the rope to the register and left her hang; that he returned about eight o'clock the same evening, cut the rope from the register, stayed in the house that night, and the following morning poured dirt through the register over the body and covered the basement windows with paper. This confession was written out and signed by defendant in the presence of witnesses. June 19th the information herein was filed. June 21 and 22, acting under an order of the district court, two alienists examined deceased and reported him insane. June 23 defendant filed his motion for a change of venue on the ground of the prejudice of the inhabitants of the City and County of Denver. June 26 the motion for change of venue was overruled and a proceeding in lunacy was instituted in the county court on complaint of the district attorney and in compliance with an order of the district court entered under the statutes in such case made and provided, and particularly section 562, C. L. 1921. A commission was appointed, and an attorney as guardian ad litem to represent defendant, all as provided by sections 550, 551 and 552 Id. An inquest was held and the commission made report as provided by sections 553 and 554 Id. This report declared defendant insane. It was approved, and an order of commitment to the Colorado State Hospital duly entered as provided by section 555 Id. The following day the city attorney of Denver, on behalf of the mayor, manager of safety and chief of police, and by leave of court, acting under the provision of section 558 Id., objected to the order of commitment and demanded that the questions considered by the commission be tried by a jury. Over defendant's objection a trial was had accordingly, beginning July 12, and concluding July 18. Contrary to the finding of the commission the jury returned the defendant sane.

This cause came on for trial in the district court September 18, 1922, and the jury was instructed and returned

its verdict one week later. The evidence of the people, which included the confession of the defendant and the circumstances under which it was made, clearly established defendant's guilt. The facts were not disputed and defendant did not take the stand. He rested his case solely upon evidence of insanity given by a considerable number of properly qualified and reputable experts whose professional standing, skill and learning are unquestioned. A part of this testimony related to language and conduct of defendant, his appearance, and other facts and circumstances within the knowledge of his acquaintances and associates, which these experts said furnished an important part of the foundation upon which they based their opinion of insanity. The disease from which they testified he suffered was paresis, or paretic dementia, a progressive affliction, physical and mental, caused by syphilis. They were not in entire accord as to whether defendant at the time of the commission of the crime and at the time of trial was able to distinguish between right and wrong, but irrespective of that fact they were agreed that he had not the power of choice.

The people's rebuttal consisted of the testimony of numerous lay witnesses who had known defendant for varying periods of time, some in a social, others in a business way. These included a lady at whose house he roomed, another with whom he kept company, a superintendent under whose management he was employed and worked, men who did business with him under his own name and under an' assumed name, an officer who arrested him in Chicago and brought him to Colorado to be tried for illegally disposing of property, merchants from whom he had obtained goods by false representations and for which he had failed to pay, and a teller at the bank where he had done business for two years. All of these witnesses recited in detail the facts and circumstances of their acquaintance and association with defendant, their opportunities for observation and knowledge, the acts, circumstances, conduct and conversation upon which their opinions were based, and followed these

with a statement of their conclusion that defendant was sane. Practically all this evidence relating to defendant's conduct and conversation was a flat contradiction of the evidence concerning the same things upon which the experts in part based their conclusions.

At the close of this rebuttal the defense sought by sur-rebuttal to establish defendant's insanity by the testimony of lay witnesses. This the court excluded confining such testimony to a contradiction of facts and circumstances, conduct and conversation, as testified to by the people's witnesses in rebuttal, and upon which said witnesses based their opinion of sanity. Three of these witnesses called on surrebuttal testified from information obtained by them while in jail with defendant. Two of them were ex-convicts.

Nineteen instructions were given by the court and seven, tendered by defendant, refused. The verdict was returned September 25, 1922, and defendant was given fifteen days to file a motion for a new trial. That motion was filed October 11, and on October 21, a so-called "amended and supplemental motion for new trial" was filed. These were both overruled October 21. Thereupon defendant tendered and was given leave to file a motion in arrest of judgment and the motion was overruled. As it appears in this record its date of filing was October 23.

MR. JUSTICE BURKE (after stating the facts as above).

The principal errors alleged by the defense, and the only ones necessary to notice are: 1. That the court erred in overruling defendant's motion for a change of venue; 2. that the record of the inquest in the county court, and the judgment of that court, relating only to the question of the sanity of defendant at the time of the inquest, and being wholly unconnected with the question of his sanity at the time of the commission of the crime, was immaterial and its admission improper; 3. that the lunacy commission appointed by the county court having returned the defendant insane and that report having been approved, the county court was without power to proceed further, and par-

ticularly without power so to do unless said report and findings were, by order duly entered, first set aside; 4. that it was error on the part of the trial court to permit lay witnesses to express their opinions concerning defendant's sanity; 5. that the court erred in excluding evidence of lay witnesses, in surrebuttal, on the question of defendant's sanity; 6. that the court erred in failing to instruct the jury to disregard a certain "demonstration" which occurred in the court room during the closing argument of counsel for the people; 7. that the court erred in giving instruction No. 8, and in refusing defendant's requested instruction No. 3; 8. that the verdict is clearly against the weight of the evidence; 9. that the court erred in overruling defendant's "amended and supplemental motion for new trial", and motion in arrest of judgment.

Before considering these questions in order we note in passing that counsel for defendant in their opening brief cite approximately one hundred authorities. Nine only of these are from this jurisdiction and eight of that number go to the question of defendant's requested instruction No. 3. Of the latter the only one in point is dismissed with the suggestion that it is not good law. Most of the questions here raised are settled by the express language of Colorado statutes, or decisions of our own court.

1. The question of the existence of such prejudice as would require a change of venue was a question of fact. The fact was in dispute. To grant or deny the change rested in the sound discretion of the court. *Andrews v. People,* 33 Colo. 193, 204, 79 Pac. 1031, 108 Am. St. Rep. 76; *Erbaugh v. People,* 57 Colo. 48, 50, 140 Pac. 188. No abuse of that discretion is disclosed by this record.

2. Defendant's alienists testified that defendant was insane for a considerable time prior to, at the time of, and ever since, the commission of the murder; and that his disease was progressive and incurable. Evidence that he was in fact sane at the time of the inquest tended to discredit all this testimony. It was clearly admissible.

3. This assignment is fully answered by the express

provisions of those sections of our statutes hereinbefore cited. By them the county court was obliged to appoint a commission, refer to it the question of defendant's sanity, receive its report, enter an order approving the same and committing defendant, entertain a demand on the part of "any person interested in the proceedings" and dissatisfied with the order of commitment that the question be submitted to a jury (when such demand was filed within five days), try the question of sanity to such jury, receive its verdict and enter a decree accordingly. There is no statutory requirement that the order of affirmance and commitment following the report of the commission be set aside before the question is tried to a jury, or after the return of its verdict in case such verdict be contrary to the former finding. By express direction of the statute the court retains jurisdiction during the period of five days. Whether the order entered on the report of the commission has any element of finality depends entirely upon the filing of a demand for a jury trial. The verdict and decree, being contrary to the findings and order and later in point of time, of necessity revoked the former. No express words were required.

It is urged that the objectors were not "interested" hence not entitled to make the demand. The mayor, under the Constitution and city charter, appoints a commissioner of safety who is ex-officio sheriff. The chief of police acts under the commissioner and is in fact a chief deputy sheriff. These are the men primarily charged with the protection of life and property in this city. If the defendant was in fact sane at the time of the killing and at the time of the inquest, and the finding of the commission and the order of commitment based thereon were allowed to stand, an atrocious murder would go unpunished and the law, with whose execution on behalf of the people these officials stand charged, would in this case become a nullity. It is difficult to conceive of any person, or persons, more interested in the proceedings than said officers save the defendant himself. The contention is wholly without merit.

4. A non-expert witness may never, in response to purely hypothetical questions stating the facts, be permitted to give an opinion on the question of sanity. But by the great weight of authority one who, in the opinion of the trial court, shows adequate means of becoming acquainted with the person whose mental condition is in issue, after detailing the facts and circumstances concerning his acquaintance and the acts, conduct and conversation upon which his conclusion is based, may give his opinion on the question of sanity. The weight of that opinion is for the jury. Underhill on Criminal Evidence, §§ 161, 162; Chamberlayne, Modern Law of Evidence Vol. III, §§ 1903, 1904, 1908, 1911, 1919; Wigmore on Evidence (2d Ed.) § 689 (Pocket Code, § 416); Abbott, Proof of Facts, p. 590, § 8.

This rule, supported by the weight of authority and better reasoning, has been adopted by the courts in this jurisdiction. *Oldham v. People*, 61 Colo. 413, 416, 158 Pac. 148.

5. Why defendant should be permitted to split his evidence of insanity into expert and non-expert does not appear. No sufficient reason is suggested in the briefs and no authority cited in support of the practice. It is contrary to established rules governing the orderly progress of trials. 38 Cyc. 1352.

The most that can be said in favor of the position is that the matter rested in the sound discretion of the court never reversible save for gross abuse. Thompson on Trials, Vol. I, §§ 343, 344, 346.

Possibly permission to defendant to so split his evidence would have involved an abuse of discretion (*Bershenyi v. People*, 71 Colo. 432, 207 Pac. 591); certainly the refusal did not. Such a method differs in no respect from that of splitting oral and documentary evidence in the same way.

6. One ground of defendant's motion for a new trial was that the jury was improperly influenced by the conduct of spectators in attendance. The incident upon which this ground is based is set out by the affidavit of one of defendant's counsel filed in support of said motion, from which affidavit it appears that special counsel for the peo-

ple, near the close of his argument, said in substance: "This defendant started his defense with alienists and ended it with jail-birds." This statement, if made, was so true and the jurors so cognizant of the fact that further comment is unnecessary. Said affidavit, however, further recites: "Whereupon the spectators above named, laughed, cheered, and applauded the statements so made * * *. Thereupon the Judge presiding, the Hon. Charles C. Butler, ordered the court room cleared." Two other affidavits to the same effect are filed, in form identical with that of counsel for defendant and made upon blanks which leave a strong impression with the court that these documents are of the "sign here" variety. Accepting them, however, at their full face value and assuming that they are in all respects a part of the record before us, it is significant that the record contains no suggestion of an objection by the defense at the time of the outburst, no request for any special admonition to bystanders or jurors, and no requested instruction to the latter to disregard the demonstration. In passing upon this portion of the motion Judge Butler said: "The affidavit says that the spectators 'laughed, cheered and applauded the statements and gave approval.' I watched very closely everything that occurred at the moment. There was some laughing,—not audible; there was no cheering, not a particle of cheering. There was no applause except that perhaps one or two people in the rear of the court room clapped their hands. That was all; and immediately the court ordered the court room cleared, and it was cleared and the doors were locked. I am very confident that could have had no effect and had no effect whatever upon the verdict of the jury."

This finding of the trial court is not otherwise disputed and we see no reason to disagree with it. If correct, as we must assume, no prejudice resulted. 16 C. J. 1176. The incident belongs to that class the true significance and importance of which, and their effect, if any, upon the verdict, are best known to the trial Judge and for that reason rest within his sound discretion.

7. The court's instruction No. 8 authorized the jury to return a verdict of murder in the second degree. Defendant's requested instruction No. 3 required the jury to find defendant either guilty of murder in the first degree or not guilty because of insanity. Over the protest of defendant the first was given and the second refused. Numerous authorities are cited by counsel for the defendant in support of their contention that these rulings constitute reversible error, but their main reliance on this point is based upon the opinion in *Dickens v. People,* 67 Colo. 409, 186 Pac. 277. In the *Dickens* case the verdict was guilty of murder in the second degree and the contention was that jurors who in fact believed that the case of the people had not been established compromised on the lower grade. The authority is not in point.

The rule laid down in the *Dickens* case is inapplicable where the jurors return a defendant guilty in the first degree. *Baker v. People,* 72 Colo. 68, 209 Pac. 791. In that case, as here, the defense was insanity.

8. On the question of evidence nothing need be said beyond the statement that we have examined with care the 1700 folios of this record and are in full accord with the trial Judge in his statement that "the evidence was ample to justify the verdict."

9. The question raised by the "amended and supplemental motion" for a new trial was the constitutionality of the act under which this information was filed; its alleged invalidity being based upon the irregularity of its passage, a matter to be established, if at all, by evidence. Defendant sought to raise the same question by his motion in arrest of judgment.

The facts upon which these motions were based were presumably at all times within the knowledge of counsel for defendant. Why the point was not included in the original motion for a new trial does not appear. The ground was a new one and the so-called "amended and supplemental motion" had no relation to the original. It was in fact a new and independent motion and must be tested

as such. A motion for new trial must be filed within the time limited by statute, or order of court, and an application for extension of time within the same limits. Otherwise they cannot be considered. 16 C. J. 1210, §§ 2732, 2733; *Keenan et al. v. C. F. L. Co.*, 65 Colo. 113, 173 Pac. 1140. The reason being the same in criminal cases as in civil the rule is the same.

A motion in arrest of judgment must be based upon matters appearing of record. Evidence, whether oral or by deposition, forms no part of the record and judgment will not be arrested under a motion based thereon. *Harris v. State*, 53 Fla. 37; 43 So. 311; *People v. Kelly*, 94 N. Y. 526. Both motions were properly overruled.

This entire matter seems to have been handled with exceptional skill, fairness and justice both in the county and district courts and their records are peculiarly free from error. The judgment is accordingly affirmed.