## No. 10,871.

### SHERRILL v. THE PEOPLE.

Decided May 5, 1924.

Plaintiff in error was convicted of the larceny of an automobile.

*Affirmed.*

*On Application for Supersedeas.*

1. CRIMINAL LAW—*Insanity—Evidence.* On the question of the insanity of a defendant, testimony of the contents of report cards—which were not produced—showing defendant's condition, what a witness learned from officers of a school, and of an expert concerning the history of defendant's acts and conduct, held properly excluded as hearsay.

2. *Insanity—Evidence.* Where an expert alienist testified that a defendant was suffering from a progressive form of insanity and getting worse, the record of a lunacy inquisition a day or two prior to the trial showing defendant was sane, held competent for the purpose of discrediting the testimony of the expert.

3. *Insanity—Jury Question.* In a criminal prosecution, the question of a defendant's sanity at the time of the commission of the crime is one entirely for the jury.

*Error to the District Court of Larimer County, Hon. Neil F. Graham, Judge.*

Mr. BOSWELL F. REED, Mr. ROBERT W. STEELE, JR., Mr. MORTIMER STONE, for plaintiff in error.

Mr. WAYNE C. WILLIAMS, Attorney General, Mr. HAROLD CLARK THOMPSON, Assistant, Mr. W. H. WINSLOW, JR., Deputy District Attorney, for the people.

*Department Three.*

MR. JUSTICE SHEAFOR delivered the opinion of the court.

CONVICTED of the larceny of a Cadillac automobile of the value of $1,200, the property of Clark Rogers, and sen-

tenced to a term in the penitentiary, the defendant William B. Sherrill, brings the case to this court for review and applies for supersedeas. The defense interposed was insanity. The points relied upon for a reversal are: (1) Insufficiency of the evidence to justify the verdict; (2) that the court erred in admitting in evidence the record of an inquisition of lunacy held just prior to the beginning of the trial; (3) that the court erred in sustaining objections made on behalf of the people to the introduction of evidence in support of the defense of insanity.

On May 13, 1922, between the hours of 8 and 10 o'clock in the evening, defendant took a Cadillac automobile parked by its owner, Clark Rogers, in front of a garage in Ft. Collins, and drove it to Cheyenne, Wyoming. He was arrested there the next morning, brought back to Fort Collins, and placed in confinement. The defendant testified in his own behalf and admitted taking the car. He testified that when he took the car, he knew that it did not belong to him, and knew it was wrong to take it; that he could not exercise control over himself; that he could not refrain from taking it; and that he did not intend to keep it. He further testified that on the way to Cheyenne he had a "blow-out," and had to change tires. He further testified that when arrested he gave the name of "O. G. Norris," and that he had been convicted in 1919 or 1920, in the West Side court in Denver of auto theft. The record discloses that on October 3, 1921, a lunacy court at Haskell, Texas, found the defendant to be then of unsound mind, and that it was necessary that he be placed under restraint; that his condition had been continuous for the past ten years and that insanity was hereditary in the family of defendant. Again, about May 27, 1922, a lunacy commission was appointed by the county court of Larimer county, Colorado, which reported the defendant to be insane. This last lunacy inquisition was about 14 days after the taking of the car, while the defendant was in custody, and after an information had been filed against him charging him with the larceny of the car, and without an order of the

district court as provided in Compiled Laws 1921, § 562. On September 13, 1923, the trial judge made an order, at the request of the defendant, that proceedings in lunacy for the determination of the sanity or the insanity of the defendant be instituted in the county court, and ordered an inquest to be held by the county court of Larimer county, to determine that question, and that the county court report to the district court the findings and judgment therein. Afterward and on the 19th day of September, 1923, pursuant to that order, the county court appointed a lunacy commission to inquire into the mental condition of the defendant. Thereafter the lunacy commission reported that on the 20th day of September, 1923, they examined the defendant and found him sane, which report was approved by the county court on September 21, 1923. Afterwards Drs. Carey and Wilkin testified on behalf of the defendant in accordance with the report made by them of the examination of the defendant, made May 27, 1922.

Dr. Edward Delehanty, a specialist in nervous and mental diseases called by the defendant testified that he believed the boy to be insane and not responsible for his acts. He further testified that defendant's insanity is what is known as impulsive insanity, what is known as kleptomania, indications of which are lack of will power, the entire loss of the power to restrain themselves from doing those things when the impulse comes to them. Dr. Delehanty further testified that the defendant was suffering from a progressive form of insanity; that he was gradually getting worse, and that his mental condition was worse at the time of the trial than it was a year previous to that time.

The people in rebuttal called Drs. Norton and Gleason, both of whom testified in accordance with, and sustaining, their report, as a lunacy commission, of the examination made September 20, 1923. The people also called Drs. Taylor and Kickland, both of whom testified that they together made an examination of the defendant about 10 days before the trial, and they testified that in their opin-

ion the defendant was sane, and responsible for his acts; that he knew the difference between right and wrong and had the will power to act on that knowledge. Neither of the doctors called, except Dr. Delehanty, claimed to be alienists, nor to be specialists in nervous and mental diseases.

The principal contention of the defendant is that the defendant having been found insane by the lunacy court at Haskell, Texas, in October, 1921, which was about seven months previous to the commission of the crime, and the finding of the lunacy commission in Larimer county, Colorado, May 27, 1922, 14 days after the commission of the crime, it should be presumed that he was insane at the time of the commission of the crime, and of course unaccountable for his acts. A further contention of defendant is that the findings of the lunacy commission on September 21, 1923, was only conclusive of the defendant's sanity at the time of the trial, over a year after the commission of the crime, and that the people introduced no evidence showing, or tending to show, that he was sane at the time of the commission of the crime.

The defendant urges that the court erred in admitting in evidence "People's Exhibit A", being the record of the insanity proceedings had on September 21, 1923, a day or two prior to the trial, for the reason, as he claims, that the same was incompetent. Also that the court erred in refusing to admit the evidence offered by defendant from the witness W. E. Sherrill as to what report cards, received from the school at Kirksville, Missouri, showed concerning defendant's condition, the report cards not being produced, and what he learned from the officers of the school in person, and also that the court erred in refusing to permit Dr. Delehanty to relate to the jury, in answer to a question which required him to state the basis for his opinion that defendant was insane, the facts and circumstances upon which he based his opinion as an expert, i. e., the history of the defendant's acts and conduct, as he, the witness, had heard them from other persons.

1. We do not think the court erred in sustaining the objections made on behalf of the people to the introduction of certain evidence offered in support of the defense of insanity. The evidence rejected was clearly incompetent as being hearsay. The witnesses were permitted to testify quite fully on the question of the insanity of defendant. The reference hereinbefore made to the testimony of Dr. Delehanty shows that he was permitted to cover the question in all its aspects.

2. We think the court did not err in admitting "People's Exhibit A," being the record of the lunacy inquisition held on September 20, 1923. It was competent evidence. It was competent for the purpose of discrediting the testimony of Dr. Delehanty, he having testified, as already suggested, that the defendant was suffering from a progressive form of insanity and getting worse.

In *Turley v. People,* 73 Colo. 518, 524, 216 Pac. 536, 539, this court said: "Defendant's alienists testified that defendant was insane for a considerable time prior to, at the time of, and ever since, the commission of the murder; and that his disease was progressive and incurable. Evidence that he was in fact sane at the time of the inquest tended to discredit all this testimony. It was clearly admissible."

Undoubtedly the question of defendant's sanity was one entirely for the jury. "* * * The question of the mental condition of a defendant at the time in respect to the act should go to the jury for its determination as matter of fact upon all the evidence adduced, under general instructions defining the scope of the inquiry." *Ryan v. People,* 60 Colo. 425, 434, 153 Pac. 756, 759 (L. R. A. 1917F, 646, Ann. Cas. 1917C, 605).

It was for the jury to determine from all the testimony in the case whether the defendant was sane or insane at the time of the larceny of the car in question and whether at that time he was accountable for his acts.

There was ample testimony to sustain the verdict and we are not permitted to disturb it.

We have carefully and fully examined the entire record

in this case, and are unable to find any error in the record which would justify a reversal.

Supersedeas is denied and judgment affirmed.

MR. CHIEF JUSTICE TELLER and MR. JUSTICE CAMPBELL concur.