*Ex parte* .RUFUS CHESSER.

En Banc.

1. When it is suggested before the Court in which a person has been tried, convicted and sentenced to capital pnishment that subsequent to sentence such convict has become and is insane to such a degree that he is unable to understand the nature, purpose and effect of the process about to be executed upon him, the trial court may inquire into the question of the present sanity *vel non* of the convict, even though the judgment of conviction has been affirmed by the Appellate Court.

2. In this State there is no statute regulating the procedure to be followed by the trial court in inquiring into the sanity *vel non* of a convict who is alleged to have become insane subsequent to the judgment and sentence, The principles of the common law therefore apply.

3. When a sentence to capital punishment has been pronounced upon a convict, and thereafter the trial court entertains a reasonable doubt of the convict's sanity after sentence, such Court may proceed to determine the question of the present sanity *vel non* of the convict. In the determination of such matter the convict is not entitled, as of right, to a trial by jury, nor is a jury trial essential to due process.

4. A convict under sentence of capital punishment has no legal right to demand or compel an inquiry into his present sanity since the pronouncement of sentence. The rights of the convict as an offender on trial for an offense are not involved.

5. The purpose of an inquiry into the present sanity of a convict under sentence of death, upon a claim on behalf of the convict that he has become insane since the sentence, is to satisfy the trial court upon that question so that such order may be made with reference to the execution of the death warrant as the dictates of humanity, public policy and the law shall require.

6. A proceeding after judgment and sentence for the purpose of inquiring into the present sanity of a person under sentence of capital punishment is purely collateral, and has no reference to the validity or ultimate enforcibility of the judgment of conviction.

7. When it is claimed on behalf of a person who has been convicted and sentenced to capital punishment that he has subsequently become insane, a determination by the trial court of the question of the convict's present sanity is conclusive, and in this State such dtermination is not subject to review under the principles of the common law nor is it allowed by statute.

8. The words "case" or "cause," when used as legal terms, are generally understood as meaning a judicial proceeding for the determination of a controversy between parties wherein rights are enforced or protected or wrongs are prevented or redressed.

9. There must be a final judgment and sentence to support a writ of error in a criminal case.

10. The determination of the trial court upon the question of the present sanity of a convict under sentence of death upon an inquiry after judgment and sentence have been pronounced is not "a final judgment and sentence" as contemplated by Section 6146, Revised General Statutes, 1920.

A motion for stay of execution of sentence.

Denied.

*James H. Bunch,* of Jacksonville, for movant;

No appearance *per contra.*

STRUM, J.—Upon a trial in the Circuit Court for Clay County, Rufus Chesser was adjudged guilty of murder in the first degree and sentenced to death. The defense prin-

cipally relied on at the trial was insanity. On writ of error the judgment of conviction was affirmed. Chesser v. State, 109 South Rep. 599. Subsequently, a petition for writ of error *coram nobis* was denied. Chesser v. State, 109 South. Rep. 906. Pursuant to the statute, a warrant for Chesser's execution was issued by the Governor, and the date of execution was set for February 18, 1927.

On February 17, 1927, a petition for a writ of *habeas corpus* was presented to this Court alleging that since the judgment and sentence aforesaid Chesser had become insane, the purpose for which the writ was sought being to obtain an inquiry into the question of Chesser's sanity as of that time. The petition was denied. *Ex parte* Rufus Chesser, decided at the January term, 1927, opinion filed February 18, 1927. In denying the petition for writ of *habeas corpus* this Court said: "Whatever may be the power of this Court in the premises, a proper judicial procedure is not an attack on the judgment of conviction, but an application to the trial court for a stay of execution of its judgment and sentence until that court can inquire into and adjudicate the question of the petitioner's sanity or insanity, since the judgment of conviction."

Thereupon, on February 18, 1927, the day set for the execution, Chesser's parents, in his behalf, suggested before the Circuit Court for Clay County, in which the judgment against him had been rendered, that Chesser had become insane since the judgment of conviction and was unable to appreciate the seriousness and effect of the process of the Court about to be executed upon him, and moved that Court to inquire into and determine the question of Chesser's sanity or insanity since the judgment of conviction, and that pending such determination the execution of the judgment of conviction be stayed. The motion was granted.

The Circuit Court for Clay County then proceeded to an inquiry into the question of Chesser's sanity subsequent to the judgment of conviction. No jury was empanelled. The matter was considered by the judge of said court upon affidavits submitted with the motion aforesaid, upon the testimony of witnesses taken at three hearings, and upon an examination of Chesser himself by the judge.

On March 2, 1927, the Circuit Court aforesaid, amongst other things, found and ordered in the inquiry "that said defendant (Rufus Chesser) was on February 18, A. D. 1927 (the day previously set for his execution), and that he is now sufficiently sane to understand the nature and seriousness of the processes of this Court, it is, thereupon, on consideration, ordered, adjudged and decreed that the stay of the execution of the sentence of this Court and the warrant of the Governor of this State based upon the judgment and sentence of this Court be and the same is hereby brought to an end and that said judgment and sentence and warrant be and they are hereby held to be in full force and effect, as if the stay thereof hereinbefore referred to had not been made.'' ·

On March 4, 1927, Chesser caused to be issued by the Clerk of the Circuit Court for Clay County what purports upon its face to be a writ of error which is presumably addressed to the order of said Circuit Court of March 2, 1927, and on March 16, 1927, an order of insolvency was entered by that Court. The purported writ of error is returnable to this Court on May 27, 1927.

On March 9, 1927, the Governor issued a further warrant, by which it is ordered that Chesser be executed pursuant to law in the week beginning Monday, the 21st day of March, 1927, a day prior to the return day of the purported writ of error.

Chesser now seeks an order from this Court staying his

execution pursuant to the Governor's warrant of March 9, 1927, until disposition by this Court of the purported writ of error.

Since there is in this State no statute governing the question before us, the principles of the common law apply. *Ex parte* Rufus Chesser, decided February 18, 1927.

The rule of the common law is stated in Hammond's Blackstone's Commentaries, Book 4, c. 2, pages 24, 25, and in Cooley's Blackstone (4th Ed.), Vol. 2, pages 1230, 1231, as follows:

"If, after he (the defendant) be tried and found guilty, he loses his senses before judgment, judgment shall not be pronounced, and if, after judgment, he becomes of non sane memory, execution shall be stayed; for peradventure, says the humanity of the English law, had the prisoner been of sound memory he might have alleged something in stay of judgment or execution. * * * But, if there be any doubt whether the party be compos or not, this shall be tried by a jury."

A jury trial, however, even in cases of doubt, was not an absolute or inherent right at common law, though in such cases it was usual to empanel a jury and summarily try the collateral issue of sanity *vel non*. Neither is a trial by jury, in such a matter, essential to due process under the circumstances here presented. Nobles v. Georgia, 168 U. S. 398, 18 Sup. Ct. Rep. 87, 42 L. Ed. 515; Laros v. Commonwealth, 84 Penn. State 200. When the judge of the trial court whose judgment is about to be executed is satisfied that the defendant has become insane after conviction, such judge may in his discretion, without submitting the question to a jury, stay the execution of the judgment until the defendant regains his senses. 4 Blackstone's Commentaries, p. 396; Nobles v. Georgia, 168 U. S. 398, 42 L. Ed. 515; Boughn v. State, 28 S. E. Rep. 68;

Bulger v. People, 156 Pac. Rep. 800. When not regulated by statute, the method of determining the preliminary question of insanity is largely within the discretion of the Court, which may itself enter upon the inquiry or may adopt some other mode, with or without the aid of a jury. State v. Nordstrom, 58 Pac. Rep. 248, 53 L. R. A. 584.

The trial Court may act in such matters upon the suggestion of the convict, or of some one in his behalf, or the Court may act of its own motion. The convict has no legal right to demand or compel such an inquiry. State v. Nordstrom, 58 Pac. Rep. 248; 53 L. R. A. 584; Baughn v. State, 28 S. E. Rep. 68; Spann v. State, 47 Ga. 549, 10 A. & E. Encyc. P. & P. 1220. The whole proceeding is in the nature of a stay of execution, and is based rather upon public policy and a sense of propriety than upon any right in the convict. ''The plea at this stage is only an appeal to the humanity of the Court to postpone the punishment until a recovery takes place, or as a merciful dispensation. The rights of the prisoner as an offender on trial for an offense are not involved. He has had the benefit of a jury trial, and it is now the Court only which must be satisfied on the score of humanity''. Nobles v. Georgia, *supra;* Loros v. Commonwealth, *supra*. The purpose of such an inquiry is to satisfy the trial Court of the present sanity or insanity of the convict so that such order may be made with reference to the execution of the death warrant, which is based upon the judgment of the Court, as the dictates of humanity, public policy and the law shall require. The proceeding is purely collateral, and has no reference to the validity or ultimate enforcibility of the judgment of conviction. The question of the convict's sanity at the time of the commission of the crime, and at the time of his conviction, has been conclusively settled by the judg-

ment of the trial Court, duly affirmed by this Court on writ of error.

If, subsquent to judgment of conviction and sentence to death, the trial judge entertains a reasonable doubt of the present sanity of the convict in such a degree that he is unable to understand the nature, purpose and effect of the process about to be executed upon him, the trial judge may, and should, notwithstanding the affirmance of the judgment by this Court, inquire into the sanity *vel non* of such convict for the purpose of determining whether such sentence should be executed. In the absence of legislative regulation (See Noble v. Georgia, *supra*), such an inquiry may be made with or without a jury at the discretion of the trial judge, and may rest upon a personal inspection or examination of the convict, or by inquiry from attending physicians, or from others who have means of knowledge. If the convict be found insane to the degree hereinabove mentioned, such finding in no wise affects the validity or ultimate enforcibility of the judgment against him. He should be suitably confined until he regains his senses, when the judgment may be executed as originally pronounced. If on the other hand the mental condition of the convict be found to be such that he understands the purpose and effect of the process about to be executed upon him the execution thereof should proceed.

At common law, collateral proceedings of the character under consideration were not subject to review, and if now reviewable at all, the authority therefor must be found in our Constitution or statutes. Bulger v. People, 156 Pac. Rep. 800.

Article 5, Section 5, of the Constitution of Florida, provides: "The Supreme Court shall have appellate jurisdiction in all cases at law * * * originating in Circuit Courts * * * and in all criminal cases originating in the Circuit Courts. * * *".

The words "case" or "cause", when used as legal terms, are generally understood as meaning a judicial proceeding for the determination of a controversy between parties wherein *rights* are enforced or protected or *wrongs* are prevented or redressed. See Liberty Warehouse Co. v. Grannis, decided by the Supreme Court of the United States, October Term, 1926.

In civil causes at law, a writ of error lies only to a final judgment, to an order granting a new trial, or to an order or rule of Court operating as a judgment for the payment of money or other thing. Sections 2901, 2902, 2905, Rev. Gen. Stats. 1920. A writ of error lies "into the Supreme Court from all final judgments and sentences of the Circuit Court in criminal cases in which said Circuit Courts have original jurisdiction * * *". Sec. 6146, Rev. Gen. Stats. 1920. There must be a final judgment and sentence to support a writ of error in a criminal case. Mathis v. State, 67 Fla. 277, 64 South. Rep. 944.

From what has been said it will be seen that an inquisition upon the present sanity of a convict after judgment and sentence is not a "case" or "cause" within the contemplation of the Constitution. Neither does the disposition of that proceeding by the Court in the manner now before us amount to "a final judgment and sentence" as contemplated by Sec. 6146, Rev. Gen. Stats. 1920. We find no statutory or other modification of the common law in this State which either expressly or impliedly authorizes a writ of error to review the action of the trial judge in the circumstances here presented.

The order of the trial Court of March 2, 1927, was no more than a disposition of a matter collateral to the judgment of conviction. Since the convict had no legal right to demand or compel the inquiry in the first place, such order did not adjudicate any substantial legal *right* of the

convict. The substance and effect of the order last mentioned was merely to vacate or terminate the previous order of February 18, 1927, staying the execution of the sentence which followed the judgment of conviction, the trial Court having meanwhile duly satisfied its conscience upon the question of Chesser's sanity.

Our veiws in this matter are supported by the following authorities: Bulger v. People, 156 Pac. Rep. 800; State v. Nordstrom, 58 Pac. Rep. 248; 53 L. R. A. 584; State v. Chretien (La.), 38 South. Rep. 27; Nobles v. Georgia, 168 U. S. 398; 42 Law Ed. 515; People v. Betchel, 130 N. E. Rep. 728; Ex parte Morris, 257 S. W. Rep. 894; State v. Gardner, 217 Pac. Rep. 1111; Holland v. State, 105 S. W. Rep. 812; Darnell v. State, 5 S. W. Rep. 522; Davidson v. Commonwealth, 192 S. W. Rep. 846; Croker v. State, 19 N. W. Rep. 435; Vaughn v. State, 28 S. E. Rep. 68; Jordan v. State, 135 S. W. Rep. 327; 34 L. R. A. (N. S.) 1115; 17 C. J. 36; 8 R. C. L. p. 251.

The purported writ of error can not be prosecuted from the judgment of conviction. A writ of error from that judgment has been previously prosecuted by the convict to this Court, and said judgment has been affirmed. In addition, a petition for writ of error *coram nobis* has been considered by this Court and denied. The convict has therefore exercised and exhausted the only right of review on writ of error secured to him by the Constitution or laws of this State. The records of this Court show that Chesser's rights have been fully and fairly presented and protected by able counsel in every lawful respect.

Since the purported writ of error was sued out without authority of law, it is a nullity. It is ineffectual to give this Court jurisdiction of either the cause in which the judgment of conviction was rendered or of the parties thereto. It brings nothing before this Court for review.

This Court is therefore without jurisdiction to stay the execution of the judgment of conviction, and the application for the issuance of such an order must be and is hereby denied.

Ordered accordingly.

ELLIS, C. J., AND WHITFIELD, TERRELL, BROWN AND BUFORD, J. J.,concur.