## No. 14,483.

PEOPLE EX REL. BEST, WARDEN *v.* ELDRED, COUNTY JUDGE ET AL.

(86 P. [2d] 248)

Decided December 21, 1938.

Mr. BYRON G. ROGERS, Attorney General, Mr. REID WILLIAMS, Assistant, for petitioner.

Mr. GAIL L. IRELAND, Mr. JAMES D. DOYLE, for respondents.

*En Banc.*

MR. JUSTICE KNOUS delivered the opinion of the court.

A JURY in the district court of Pueblo county heretofore found one Joe Arridy guilty of murder and fixed his punishment at death. Motion for a new trial was made and denied, and judgment rendered upon the verdict. Thereafter Arridy prosecuted a writ of error from this court and after a review of the record the judgment was affirmed. *Arridy v. People,* 103 Colo. 29, 82 P. (2d) 757.

Motion for rehearing was subsequently denied and the week of November 14, 1938, was fixed for the execution of the death sentence. In the murder trial the defense of insanity at the time of the alleged commission of the offense and since, was interposed by Arridy.

November 15, 1938, in the county court of Fremont county, in which county is located the state penitentiary where Arridy lately has been confined, Leonard Schwinn, Abbot of Holy Cross Abbey at Canon City, filed a complaint alleging the present insanity of Arridy and praying for an inquisition by the court on that allegation. November 17, 1938, citing the above mentioned county court proceeding as the basis therefor, counsel for Arridy, who likewise appear as counsel for the respondents here, applied to this court for further postponement of the execution and an additional stay was granted by us. In the interim the county court, purporting to act under the authority of sections 1 to 7 inclusive, chapter 105, '35 C. S. A., commonly known as the "lunacy statute," proceeded to issue a warrant directing the sheriff of Fremont county to take Arridy into custody, appointed a special lunacy commission and fixed a time for the first session thereof. November 18, 1938, the petitioner here, represented by the Attorney General, who, previously in the county court had unsuccessfully protested its lack of jurisdiction to proceed, filed this original proceeding for a writ of prohibition. Thereupon we entered an order staying further action in the county court and requiring the respondents to show cause. Pursuant thereto their answer as well as the briefs of the respective parties have since been filed.

As appears from the allegations of the answer of respondents, the object of the proceeding instituted in the Fremont county court is to procure an inquisition into the present mental condition of Arridy, to the end that if "it be determined that said Joe Arridy is insane, as alleged in said lunacy complaint, then under the law of

the State of Colorado said Joe Arridy cannot be duly executed.''

■■ The primary question here presented for solution is whether the Fremont county court had jurisdiction to proceed with the proposed inquisition. A person who was sane at the time he committed a criminal offense and at the time of the trial, which is the situation here as has been legally determined by the verdict of the jury and the judgment of the trial court in the murder case—but claims to have become insane during his confinement awaiting execution of the death sentence—does not have an absolute right to a trial to determine his present mental condition, unless it is expressly conferred by statute, since the recognition of such right in unqualified form would be tantamount to granting a convict the privilege of thwarting the administration of criminal justice for an indefinite term. 14 Am. Jur., p. 804, §48; *Bulger v. People,* 61 Colo. 187, 156 Pac. 800; *Shank v. People,* 79 Colo. 576, 247 Pac. 559. Our statute ('35 C. S. A., c. 48, §7), prescribing that a person who becomes insane after conviction of a capital offense, shall not be executed until his recovery from the lunacy, is as follows:

''A person that becomes lunatic or insane after the commission of a crime or misdemeanor ought not to be tried for the offense during the continuance of the lunacy or insanity. If, after verdict of guilty and before judgment pronounced, such person becomes lunatic or insane, then no judgment shall be given while such lunacy or insanity shall continue, and if after judgment and before execution of the sentence, such person becomes lunatic or insane, then in case the punishment be capital, the execution thereof shall be stayed until the recovery of such person from the insanity or lunacy. In all these cases it shall be the duty of the court to impanel a jury to try the question whether the accused be at the time of impaneling insane or lunatic.''

We determined in *Bulger v. People, supra,* that this statute departed from the common law only in the con-

cluding sentence of the section relating to the impaneling of a jury. The Supreme Court of Illinois, under a statute identical with ours, announced the same conclusion in *People v. Preston,* 345 Ill. 11, 177 N. E. 761. At common law an inquisition to determine the mental condition of a person convicted of crime and under sentence of death, but who it was alleged had become insane since rendition of judgment, was under the control of the trial court and that court *alone* decided when an inquisition was warranted. 4 Blackstone's Commentaries, p. 395; *Nobles v. Georgia,* 168 U. S. 398, 18 Sup. Ct. 87, 42 L. Ed. 515; *People v. Preston, supra; Ex parte Chesser,* 93 Fla. 190, 112 So. 87.

This collateral proceeding was merely an appeal to the humanity of the court to postpone the execution. *Laros v. Commonwealth,* 84 Pa. 202. "An inquisition in common law was under the control of the trial court. * * * It alone decided when the circumstances suggested an inquisition, and it conducted the inquisition itself, or supervised the calling and return of the jury. Aside from the power of the crown to pardon because of insanity—just as it could pardon for any other cause—the sole control over the question of insanity was in the trial court." *In re Herron,* 77 N. J. L. 315, 72 Atl. 133. In the latter case the court further determined that a New Jersey statute relative to inquisitions as to the sanity of persons confined under a sentence of imprisonment did not include a case where a person was confined under sentence of death. In *Ex parte State, ex rel. Attorney General,* 150 Ala. 489, 43 So. 490, 10 L. R. A. (N. S.) 1129, it was held that an application to inquire into the sanity of a person held under sentence of death must be made to the court imposing the sentence, and cannot be made to another court, upon the principle that such a person is technically in the custody of the trial court whose duty it is to see that the sentence is executed. To the same effect are: *Duncan v. State,* 110 Ark. 523, 162 S. W. 573; *Baughn v. State,* 100 Ga. 554, 28 S. E. 68, 38 L. R. A. 577,

affirmed in *Nobles v. State,* 168 U. S. 398, 18 Sup. Ct. 87, 42 L. Ed. 515; *Sears v. State,* 112 Ga. 382, 37 S. E. 443; *State v. Nordstrom,* 21 Wash. 403, 58 Pac. 248, 53 L. R. A. 584.

In *Ferguson v. Martineau,* 115 Ark. 317, 171 S. W. 472, Ann. Cas. 1916E 421, where the right of the probate court to proceed with an inquisition in a case of this character was denied, it was said that an Arkansas statute providing for a sanity inquisition by the probate court—generally similar to sections 1 to 7, chapter 105, '35 C. S. A., under which the county court here purports to proceed—was enacted solely for the purpose of protecting the civil and property rights of insane persons and had no reference whatever to determining the issue of the sanity of one who has been convicted and sentenced to be executed for a criminal offense and who is already in custody of law for that purpose. To substantially the same effect is *In re Smith,* 25 N. M. 48, 176 Pac. 819, 3 A. L. R. 83.

It, therefore, follows that, since our statute has made no change in the common law other than we have indicated, no court, save the district court of Pueblo county in which the murder trial was held, has jurisdiction to make inquiry into the present mental condition of Arridy and the initiating of an insanity inquisition is solely within the discretion of that court. Indeed, the use of the word "court" in the last sentence of the statute definitely shows that proceedings of the character here under consideration must be had in the trial court. Concerning the discretion so conferred upon the trial court we said in *Bulger v. People, supra,* at page 193: "Thereunder when insanity in such cases is suggested or alleged the court may determine the condition of the prisoner's mind by a personal inspection or examination of him, either public or private; by inquiry from attending physicians, or from those around the prisoner who have means of knowledge; and if, after such investigation and inquiry, the judge has no doubt of the prisoner's sanity he is neither bound

to nor should he order an inquisition. 10 Cyc. Pl. & Prac., p. 1220; *Bonds v. Tennessee* [1 M. & Y. 143, 17 Am. Dec. 795]; *Nobles v. Georgia* [168 U. S. 398]."

█ Where the trial court believes that the convict is insane, or perhaps, where it has a doubt of his sanity, it must impanel a jury and try the question. *Bulger v. People, supra.* In this state no such right, authority or discretion is conferred upon the county court by any statute. Our attention has been called to no case, and by diligent search we have discovered none, wherein it has been held—unless otherwise provided by statute—that any court, other than that before which the principal trial was held, has the right or discretion to order an inquisition concerning the mental condition of a person under capital sentence, subsequent to the pronouncing of the principal judgment.

Neither *Turley v. People,* 73 Colo. 518, 216 Pac. 536, nor *Sherrill v. People,* 75 Colo. 401, 225 Pac. 840, has any bearing on the controversy here. In those cases the issue presented related to the admissibility as evidence in the trial of criminal cases in district courts of records of lunacy inquests in county courts, held *before* the trial of the criminal charges, and *ordered* by the respective district courts under the provisions of section 15, chapter 105, '35 C. S. A., and no jurisdictional questions were involved.

█ We are of the opinion also, that the complaint filed in the county court in the present case is wholly insufficient to justify an inquisition of this character even if that court had jurisdiction. The defense urged by Arridy against his conviction in the trial of the murder case, as we have mentioned, was that he was insane. This issue was found against him by the jury and trial court, and the judgment affirmed by this court. The complaint in the county court alleges merely a present status of insanity and does not aver that the insanity so pleaded is a condition which has arisen since the conviction, a prerequisite to the invocation of our statute; consequently

it is not apparent from that pleading whether, as a matter of fact, a new issue is presented or the old defense already adjudicated against the convict is again asserted. "Where, after conviction, defendant asserts that he is insane and asks that sentence be postponed, his application should show that such insanity arose subsequent to conviction, especially where the question as to defendant's insanity was at issue and found against him in the main trial." 16 C. J. p. 1283. This text is supported by the cases of: *Shank v. People, supra; Lewis v. State,* 155 Miss. 810, 125 So. 419; *Springer v. State,* 63 Tex. Cr. 266, 140 S. W. 99; *State v. Potts,* 49 La. Ann. 1500, 22 So. 738; *State v. Brinyea,* 5 Ala. 241; *Commonwealth v. Hays,* 195 Pa. 270, 45 Atl. 728. The fallacy of the contention that an averment of present insanity is equivalent in effect to an allegation that the convict has become insane since his conviction, is clearly demonstrated by the opinion in the case of *Lewis v. State, supra.*

We, therefore, must conclude that the county court of Fremont county is without jurisdiction to proceed with the pending inquisition and the writ of prohibition accordingly is allowed.

Mr. Justice Hilliard, Mr. Justice Bouck and Mr. Justice Holland dissent.

Mr. Justice Holland dissenting.

It is my opinion that the petition for a writ of prohibition is premature in this case. The distinction between a proceeding for an insanity inquisition under section 3, chapter 105, '35, C. S. A., and a proceeding under section 7, chapter 48, '35, C. S. A., should have been kept clearly in mind to avoid the error made in granting the writ, as the order follows the majority opinion herein. I am not contending that the county court of Fremont county has jurisdiction, through a lunacy proceeding, without direction from the district court to determine the question of sanity, to the end that it, the county court, could, by

an order entered on a finding before it, stay the present and existing order of execution heretofore entered by the district court and in effect affirmed by this court. I do contend, however, that upon the filing of a proper petition under section 3, chapter 105, supra, it is mandatory upon the county judge to proceed with the inquisition. The benefits of this statute are available to any person found within the county. The results of the inquisition or any attempt to make it effective in this or any other case is not within our anticipation. For such a purpose, the jurisdiction of the county court was properly invoked and there could be no interference with the statutory direction to proceed thereon. If the county court had pursued its authority and a duly appointed commission had found defendant insane, for aught we know the matter might have ended there. Had an attempt been made upon such finding to rely upon an order based thereon, to interfere with or stop the existing order of execution of the district court, I think grounds for a writ of prohibition would then have been afforded.

Section 15, chapter 105, '35, C. S. A., reading as follows, ''Persons charged with crime.—No inquest shall be had as to the lunacy of any person charged with a criminal offense until such criminal offense shall have been tried or dismissed, unless the judge of the district court, wherein such criminal offense is pending shall order such inquest.'' seems to have been relied upon in the majority opinion as making the defendant such a ward of the court as to deny him any rights provided by the lunacy statutes above cited. It is clear that the section just quoted has to do solely with a pending criminal charge. A desirable effect of this statute is that the defense of insanity in a criminal case cannot be built up in another forum and successfully invoked in the court having jurisdiction of the criminal charge. When insanity is suggested in the trial court, it either proceeds towards a determination of that question or directs the forum where that matter is to be tried. All of this relates to

the prosecution and defenses in a criminal proceeding. In the case at bar, the question of defendant's guilt or innocence is not to be determined. It is said by the majority opinion that the petition in the county court of Fremont county does not allege that defendant has become insane between the dates of the sentence imposed and that of its execution. That allegation would be necessary in a petition to be presented to the trial court, that is, to the district court of Pueblo county. Such a petition in the trial court should allege facts that could, in the discretion of the trial court, invoke the operation of the statute. The majority opinion states that a person claiming to have become insane during his confinement awaiting execution of the death sentence, " does not have an absolute right to a trial to determine his present mental condition, unless it is expressly conferred by statute, since the recognition of such right in unqualified form would be tantamount to granting a convict the privilege of thwarting the administration of criminal justice for an indefinite term." Our statute as construed in the case of *Bulger v. People,* 61 Colo. 187, 156 Pac. 800, confers the absolute right to have the question of sanity determined. It may be determined by the court, if the court is not in doubt, otherwise an inquisition must be ordered.

Assuming that a stay of execution of the death sentence can not be entered except by the trial court, and then only after a finding before it, or under its direction, that the person has become insane after sentence, are we to say that a finding of present insanity by a commission duly appointed by the county court of Fremont county, would not be admissible in evidence on a hearing on that question before the trial court? Zealous counsel might well want to be armed with something more than a mere suggestion of present insanity, when applying to a court for this humanitarian relief, located in what could easily be an inflamed and prejudiced community. Are we then to further say that a right to obtain legitimate evidence is to be denied? If so, then there are instances when

justice is insecure. I will not lend myself to such denial, particularly where, as here, counsel and others, prompted only, as it clearly appears, by feelings and inclinations most creditable to man, are making a fair and legitimate effort to prevent the cold and tragic taking, by the people, of the life of an admitted mental incompetent, an imbecile since birth, now friendless and penniless, and without conception of what is about to occur. What manner of man is he, who can be a party to an event that brings shame upon the fair name of the law? My feelings are of no lesser degree than if this unfortunate creature was of my procreation, or one of my race and kind. I do not want such a specter as a future intrusive visitor.

Mr. Justice Hilliard and Mr. Justice Bouck concur in this dissenting opinion.